**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LAZARO MARTINEZ,

       Plaintiff,

                                **CASE NO.: 6:22-cv-00461-RBD-LHP**

v.

LOWE'S HOME CENTERS, LLC,
a Foreign Limited Liability Company,
and XPO LAST MILE, INC., a
Foreign Profit Corporation,

       Defendants.

_____/

**AMENDED COMPLAINT**

    Plaintiff, LAZARO MARTINEZ ("Plaintiff"), by and through the undersigned counsel, hereby sues Defendants, XPO LAST MILE, INC. ("XPO") and LOWE'S HOME CENTERS, LLC ("Lowe's") (collectively "Defendants"), and in support avers as follows:

**GENERAL ALLEGATIONS**

1.    This is an action by the Plaintiff for damages exceeding $30,000, excluding attorneys' fees or costs, resulting from Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, *et seq.* ("FLSA"), for unpaid overtime wages and retaliation, as well as for breach of contract, unjust enrichment, and/or quantum meruit.

2.    This Court has jurisdiction over Plaintiff's FLSA claims pursuant to the 29 U.S.C. § 216.

3.    Defendants, XPO and Lowe's, were joint employers of Plaintiff, controlling the work schedule and/or conditions of Plaintiff's employment to a substantial degree.

4.    Plaintiff was at all times relevant to this action, and continues to be, a resident of Osceola County, Florida, within the jurisdiction of this Honorable Court.

1

5.      Pursuant to the FLSA, 29 U.S.C.S. § 206(f), Plaintiff was a non-exempt employee of Defendants, performing services for Defendants as a Truck Driver. Plaintiff's duties included loading shipments of merchandise from Lowe's, transporting Lowe's merchandise to Lowe's customers, and unloading Lowe's merchandise to the customer at the destination.

6.      Defendants are employers under the interpretation of FLSA, conducting business in Orange County, Florida, where Plaintiff worked for Defendant and at all times material hereto was and is engaged in employment of persons, which affects interstate commerce.

7.      Venue is proper in Orange County because all of the actions that form the basis of this Complaint occurred within Orange County.

8.      Declaratory, injunctive, legal and equitable relief sought pursuant to the laws set forth above together with attorneys' fees, costs and damages.

9.      All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10.     Plaintiff was employed by and worked for Defendants as a Truck Driver from on or about July 2021 through on or about September 13, 2021.

11.     Plaintiff was hired by XPO, the company contracted by Lowe's to provide trucking and delivery services for its merchandise throughout the State of Florida.

12.     Plaintiff agreed to work for XPO to provide delivery services for Lowe's at a rate of $130 per day. Plaintiff would be paid by either cash or through Zelle, sent to the mother of his children, Yanza Basusto.

13.  Plaintiff always worked for Defendants in excess of forty (40) hours per week, typically working at or above fifty (50) hours per week.

14.  At all times material hereto, Defendants had or should have had full knowledge of all hours worked by Plaintiff, including those hours worked in excess of forty in a given work week.

15.  At all times material hereto, Plaintiff only provided trucking and/or delivery services for Lowe's and only dealt with or handled Lowe's merchandise or products.

16.  Specifically, Plaintiff only provided his services for the Lowe's located at 2800 W. Sandlake Road, Orlando, Florida 32819.

17.  At or around the time Plaintiff was hired by XPO to perform delivery services for Lowe's, Plaintiff was not paid for his first roughly thirteen days of work. The missing pay from this period was referred to by Defendant XPO as a "deposit" that would be owed to him and paid after the end of his employment with XPO. At Plaintiff's rate of $130 per day, this amounts to about $1,690 in unpaid wages at the outset of Plaintiff's employment.

18.  Lowe's had control over the terms and conditions of Plaintiff's employment, determining the routes and distances of his deliveries based on coordination with Plaintiff's managers at XPO. In addition, Lowe's would occasionally prohibit delivery truck drivers from taking days off during periods when Lowe's was experiencing periods of heightened demand for truck drivers due to increased sales.

19.  Plaintiff's job duties included, but were not limited to, driving a 26-foot truck, loading Lowe's merchandise on the delivery truck, and unloading the Lowe's merchandise from the delivery truck at the Lowe's customer's destination. Occasionally, Plaintiff would do installations when customers requested such services from Lowe's, which were communicated to Plaintiff through his managers at XPO.

20.     Plaintiff's managers from XPO, either Carlos (LNU) or Jose (LNU), would coordinate with managers and/or supervisory employees from Lowe's to determine what merchandise needed to be shipped to customers throughout the State of Florida.

21.     Carlos and/or Jose would speak with managers at Lowe's to discuss the delivery orders and the allotment of delivery trucks and their routes to accommodate Lowe's customers' needs, doing so either by contacting a manager at the Sandlake Lowe's location by phone or by interacting with one of the managers inside the store.

22.     Another manager with XPO, Lester (LNU), would work with the managers and/or supervisory employees from Lowe's to designate which trucks/truck drivers would be assigned to deliver the various items set for delivery and the delivery route for each truck/truck driver.

23.     Lester and Jose would also register the trucks and the assigned truck drivers for the particular delivery routes on Lowe's internal systems.

24.     The Plaintiff would receive his orders to be delivered after the merchandise set for delivery was designated to his assigned truck, as contained in Lowe's internal registration system. On information and belief, Plaintiff's managers and/or supervisors at XPO would use pseudonyms for the Plaintiff and other truck drivers when registering the delivery trucks and their drivers, usually the names of the XPO managers.

25.     On information and belief, Plaintiff's managers from XPO would register Plaintiff under the name of whichever manager had arranged the delivery route and order form with managers or supervisors from Lowe's though sometimes they would register under the name of another XPO manager.

26. On several occasions, Plaintiff had even gone into the Lowe's building himself to register his truck's delivery route on Lowe's computer system under one of his XPO managers' names. This was an accepted practice for Defendants.

27. However, Plaintiff asserts that he did register in Lowe's computer system under his own name on one occasion. Plaintiff submitted his full name and signed for his delivery of Lowe's products inside Lowe's store. After the XPO managers learned of Plaintiff submitting his own name instead of one of their names, Plaintiff was scolded and told to never use his own name for his deliveries again, telling him that he should always use his manager's name or some other alias.

28. Plaintiff would deliver large home appliances, such as refrigerators, washing machines, dish washers, etc., from the Lowe's on 2800 W. Sandlake Road to the customers' home addresses.

29. Plaintiff would load the large appliances on the truck to which he was assigned, doing so with the help of employees from both Lowe's and XPO. Plaintiff would know which items needed to be loaded on his truck based on an order confirmation form that was prepared by a Lowe's employee and assigned to Plaintiff's particular truck.

30. One such Lowe's employee who assigned the delivery orders from Lowe's computer system to the designated delivery truck, Natasha (LNU), had previously spoken with Plaintiff about a change made to one of his deliveries prior to his departure from the store, directing him to adjust his items and/or delivery route based on the updated order form.

31. On one of Plaintiff's deliveries on or about September 2021 Plaintiff's truck became stuck when leaving a Lowe's customer's home, which required the truck to be towed.

32.     Jose told Plaintiff that he would arrange for the truck to be towed and that he could get a discounted rate, but the tow would come out of the Plaintiff's pay. The tow cost about $210. Plaintiff was not pleased about the situation but accepted that he would have to account for the cost to tow the truck.

33.     However, after the incident where Plaintiff's truck needed to be towed, Plaintiff did not receive any money for the pay period from any of his XPO managers.

34.     Plaintiff spoke to Jose about why he did not receive his pay for the pay period but was either ignored or told to wait about a month for any claims to clear.

35.     Unsure of how long it would take to properly receive his wages, Plaintiff also spoke to Carlos and Lester at XPO to see if they could give him more information. Both Lester and Carlos told Plaintiff it was not their problem and that he should ask Jose.

36.     Having exhausted his options to receive payment from XPO, Plaintiff, taking the advice of some of his coworkers who had also encountered issues receiving payment from Jose, went to speak with one of the managers at Lowe's, also named Carlos (LNU) to complain about not being paid for work performed to the benefit of the two employers.

37.     On information and belief, the Carlos who was a manager at Lowe's had supervisory control over the managers from XPO and could direct the activities and payments to them, and, in turn, to the Plaintiff.

38.     Plaintiff's coworkers told him that when problems receiving payment from XPO managers had come up in the past, Carlos from Lowe's would help to resolve the XPO payment issues.

39.     Plaintiff went inside the Lowe's store and spoke with Carlos. Carlos told Plaintiff he would help him with dealing with XPO's managers and getting his payment, but, to Plaintiff's

knowledge, nothing was done to ensure Plaintiff received the money owed to him for the pay period in question.

40. Plaintiff tried to follow up on this by calling Carlos at Lowe's each day for roughly two weeks, but Plaintiff did not receive a response to his repeated attempts to resolve his payment issues, despite Carlos from Lowe's assuring him that he would help resolve the matter.

41. Shortly after the two weeks that Plaintiff had been calling Carlos at Lowe's to try to resolve his nonpayment, Plaintiff was terminated.

42. Jose told Plaintiff the reason he was being fired was because he was causing too many problems for the managers at XPO and Lowe's.

43. Plaintiff had never had an issue with anyone at either Lowe's or XPO, save for the tow, which Plaintiff already agreed and understood that he would be paying for, and the repeated requests to simply be paid what he was owed for the work he performed to the benefit of the Defendants, XPO and Lowe's.

44. Plaintiff had never been previously advised of any problems with his work performance. Plaintiff had consistently performed well while working for Defendants and would even receive compliments on his work ethic from Jose.

45. Plaintiff was terminated on or about September 13, 2021, in retaliation shortly after complaining to his managers at XPO and then going to one of the managers at Lowe's with his complaints regarding his nonpayment.

46. Plaintiff asserts that the decision to fire him came from managers from both Defendants, XPO and Lowe's, due to the Plaintiff's continued complaints about the failure to pay him

his wages. There is a causal connection with Plaintiff reporting and complaining about the failure to pay his wages and the termination that followed thereafter.

47.     Plaintiff continued to complain about his missing pay to Jose. Eventually, Jose paid him for the first three days of September on or about September 17, 2021, subtracting the $210 for towing his truck, leaving about two weeks unaccounted for. Plaintiff still pushed for the remainder of what was owed to him.

48.     Plaintiff, again, received a portion of his wages on or about September 20, 2021, but this time only one day's worth of wages. This was still insufficient.

49.     On or about September 22, 2021, Plaintiff received a message from Jose telling Plaintiff that his check would only be held up an additional three weeks, at most while he works to fight supposed claims on the truck. XPO never provided Plaintiff with evidence that any supposed claim that was stalling his payments of earned wages was related to him. Plaintiff never received the full remainder of the amount owed to him for September 2021.

50.     In addition, upon Plaintiff's termination, Plaintiff did not receive the amount of money supposedly being held as a "deposit" from when Plaintiff started working for XPO.

51.     Both Defendants profited from the services provided by Plaintiff for which he did not receive the full amount of wages owed to him.

52.     Plaintiff is owed for approximately twenty-one days of unpaid wages, equaling about $2,730.00.

53.     Plaintiff has retained the undersigned counsel in order that his rights and interests may be protected.

## **COUNT I**
### *Unpaid Minimum Wage and Overtime in Violation of FLSA*

54.  Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-53 of this Amended Complaint as if set out in full herein.

55.  This action is brought by Plaintiff to recover from the Defendants unpaid minimum wage and overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of the FLSA.

56.  FLSA extends coverage to workers by requiring employers of such employees to pay minimum wages under 29 U.S.C.S. § 206(f), as well as overtime wages under 29 U.S.C.S. § 207(l).

57.  By reason of the foregoing, the Defendants are and were, during all material times, employers as defined in §§ 3(d) of the FLSA, 29 U.S.C. § 203(d). Defendants employed Plaintiff within meaning of 29 U.S.C. § 203(g) by contracting Plaintiff to perform the duties of a Truck Driver to deliver Lowe's goods and merchandise. Plaintiff was dependent on Defendants as employers and Defendants had the ability to hire and fire employee, assign duties, and set and restrict the Plaintiff's schedule.

58.  Plaintiff seeks to recover for unpaid wages accumulated from the date of hire and/or from three (3) years from the date of the filing of this complaint.

59.  Defendants knew and/or showed reckless disregard of the provisions of the FLSA concerning the payment of minimum and/or overtime wages as required by the FLSA and remain owing Plaintiff these wages since the commencement of Plaintiff's employment with Defendants, as set forth in part above. As such, Plaintiff is entitled to recover double damages.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendants:

a.  Adjudge and decree that Defendants have violated the FLSA and have done so

willfully, intentionally and with reckless disregard for Plaintiff's rights;

b.  Award Plaintiff actual damages in the amount shown to be due for unpaid minimum and/or overtime wages, with interest; and

c.  Award Plaintiff an equal amount in double damages/liquidated damages; and

d.  Award Plaintiff the costs of this action, together with reasonable attorney fees; and

e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT II
### *Breach of Agreement*

60.  Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-53 of this Amended Complaint as if set out in full herein.

61.  Defendants breached their agreement with Plaintiff by failing to pay the amount due to Plaintiff for services provided and performed under their agreement, and by not properly paying Plaintiff for all hours worked in violation of the laws of the United States and the State of Florida.

62.  Plaintiff suffered damages as a result of Defendants' breach of said agreement.

**WHEREFORE**, Plaintiff seeks damages from Defendants for breach of agreement, exclusive of pre-judgment interest, costs, and attorneys' fees and any and all other relief that this Honorable Court deems just and proper.

## COUNT III
### *Quantum Meruit*

63.  Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-53 of this Amended Complaint as if set out in full herein.

64.     Plaintiff has conferred a benefit onto Defendants by performing and providing services for Defendants.

65.     Defendants have knowledge of the services performed and provided and the benefit provided by Plaintiff.

66.     Defendants accepted Plaintiff's services to Defendants.

67.     Defendants retained an inequitable benefit from Plaintiff by not properly paying Plaintiff for all hours worked in violation of the laws of the United States and the State of Florida.

68.     Plaintiff seeks damages under *quantum meruit* that are the reasonable value of the services rendered to, provided to, and performed for Defendants.

**WHEREFORE**, Plaintiff seeks a judgment under *quantum meruit* for damages for the reasonable value of the services performed and provided for Defendants, interest and costs, and other damages deemed just by this Honorable Court.

<u>**COUNT IV**</u>
*Unjust Enrichment*

69.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-53 of this Amended Complaint as if set out in full herein.

70.     Plaintiff has conferred a benefit upon Defendants for services performed and provided to Defendants.

71.     Defendants have knowledge of the services performed and provided by Plaintiff.

72.     Defendants voluntarily accepted the services performed and provided by Plaintiff.

73.     Defendants unjustly benefit from the services performed and provided by Plaintiff by not properly paying Plaintiff for all hours worked in violation of the laws of the United States and the State of Florida.

74.     Plaintiff seeks damages for the value of the work performed for Defendants.

**WHEREFORE**, Plaintiff seeks a judgment for unjust enrichment against Defendants, interest and costs, and other damages deemed just by this Honorable Court.

### COUNT V
### *Retaliation Violation of the FLSA*

75.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 53 of this Amended Complaint as if set out in full herein.

76.    29 U.S.C. § 215(a)(3) of the FLSA states that it is a violation to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

77.    Defendants' conduct as set forth above constitutes a violation of the FLSA's anti-retaliation provision.

78.    The motivating factor that caused Plaintiff's adverse employment action as described above was Plaintiff's complaining to Defendants regarding not being properly paid for all hours worked.

79.    The Defendants' conduct was in direct violation of the FLSA, and, as a direct result, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendants:

a.    Adjudge and decree that Defendants have violated the FLSA and have done so willfully, intentionally and with reckless disregard for Plaintiff's rights;

b.    Enter judgment against the Defendants for all back wages from the date of discharge to the present date and an equal amount of back wages as liquidated damages, and;

c.    Enter judgment against the Defendants for all front wages until Plaintiffs become 65

years of age; and

d.   Enter an award against Defendants and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

e.   Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

f.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## **JURY DEMAND**

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: <u>May 17, 2022</u>                               Respectfully submitted,

 <u>/s/ **Corey L. Seldin**   </u>
Peter M. Hoogerwoerd, Esq.
Fla. Bar No.: 0188239
pmh@rgpattorneys.com
Corey L. Seldin, Esq.
Fla. Bar No. 1026565
cseldin@rgpattorneys.com
**Remer & Georges-Pierre, PLLC**
Courthouse Tower
44 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 416-5000- Telephone
(305) 416-5005- Facsimile

**<u>EXHIBIT A</u>**

## Grua Remorke
+14074862000

domingo, 12 de septiembre de 2021



MMS 10:36





# Jose Contratista Trabajo
+13479908687



MMS 15:21

Okok

15:21

miércoles, 1 de septiembre de 2021

**J** Driver ID 4133  06:18

**J** Driver ID 6811

Usa este mejor  06:29

Ok  07:00

lunes, 6 de septiembre de 2021

**J** 👤 Dispatch Xpo
833-816-3645  MMS 08:57

domingo, 12 de septiembre de 2021

**J** 👤 Lester Lowes
+14077138145  MMS 15:21

REET
L 34785

DOORWAY HOOK UP AND HAUL AWAY

PM                    Type: Lowe's Delivery

| MODEL | QTY | UNIT | UNIT PRICE |
|-------|-----|------|------------|
| WRS325SDHZ | 1 | LCU | $1,333.00 |

Sn HRA25 06843

| $1,629.58 | $0.00 | $1,333.00 |
|-----------|-------|-----------|
| **Invoice Total** | **Delivery Charge** | **Merchandise Total** |

erchandise delivered:
materials and shipping pins.
drip pan; leveled the unit(s).
ors and ranges only).
r line connections for leaks.
220-volt electrical connections.
owner's manual.
foil due to space constraints
y signing below.



**Jose Contratista Trabajo**

4 de septiembre de 2021

Lazaro, perdón el lunes no, el martes le puedo dar libre a los 2. Yo hablé con chino esta mañana.   15:00

Estamos en el medio de un sales con Lowe's  y estamos bien ocupado.. no quieren dar libre a nadie hasta el martes . Estamos todos trabajando   15:08



18:32 ✓✓



Mensaje

← **Jose Contratista Trabajo**   📞  ⋮

1 de septiembre de 2021

🔒 Los mensajes y las llamadas están cifrados de extremo a extremo. Nadie fuera de este chat, ni siquiera WhatsApp, puede leerlos ni escucharlos. Toca para obtener más información.

➤ Reenviado

Consignee
001635191500 - KAREN RIDENER
563 BELLTOWER AVE
DELTONA FL 32725

(352) 988-7888

Area: XDT-2E - LOWES XDT - ORLANDO

View Map

Original Requested Date: 08-30-2021
Scheduled Date: Wed 09-01-2021
Communication Preferences: Phone Call

Comment:
INSTOCK REFRIG, HAUL OLD, NO
WATER HOOK UP,        2ND FLR

13:03

 ▶ ────●─────────────  
0:14                                    13:07 ✓✓

**$50 extra para cada uno**   13:55

**Jose Contratista Trabajo**
$50 extra para cada uno

Okok                       13:57 ✓✓

Gracias  13:57 ✓✓

☺  Mensaje                        📎  📷  🎤

|||          ◯          ‹

Reenviado   13 de septiembre de 2021



**LOADING TI**

LE'S®

ATE: ___/___/___   TIME: _____   A.M. P.M.

me:                                          3434
me:   EDWIN PURSCHWITZ JR          Print
      (321) 636-1130                Cust
      435317569                     2653
      81230                         COC
      09/11/2021                    Alt P
      2198099

uctions:   PLEASE DELVIER OM BULLPEN

very Date: 09/13/2021        Delivery Time Period: 8:00

| SSEMBLED | ITEM# | ITEM DESCRIPTIO |
|---|---|---|
| 0 - 12 | 782268 | GE E DRYER GTD33EASKWW (-6 |

08:36

Porque esa nevera llevo abierta ? Si no se hizo el delivery ?
08:37

Mañana estás libre ..pero igual me voy a reunir contigo para hablar de todo lo que está pasando.
18:18

Yo te aviso mañana aque hora nos juntamos
18:19

14 de septiembre de 2021

Mañana está en standby en Lowe's .. con francisco
17:59

Mensaje

**Jose Contratista Trabajo**

francisco    17:59

**15 de septiembre de 2021**

Tomorrow

27A-XDT05ORLD José/Freddy
27B-XDT06ORLD Francisco/Julio
28A-XDT07ORLD Eric/Lázaro    15:41

**16 de septiembre de 2021**

Lazaro, donde estas ?    07:02

Te están buscando en el warehouse    07:03

**17 de septiembre de 2021**

Buenas tarde José    15:49 ✓✓

Le marke para que me aga yegar mi dinero a este # d cell xfv    15:50 ✓✓

5054006497    15:50 ✓✓

Por zelle ?    16:14

> **Jose Contratista Trabajo**
> Por zelle ?

Si xfv    16:16 ✓✓

Me avisas xfv    16:21

??? 

Mensaje

**Jose Contratista Trabajo**

A caído  17:14 ✓✓

Reenviado

**$180.00**

To

**Yanza**

(505) 400-6497

| From | Business Adv Fundamentals - 9507 |
|------|------|

| Transfer Date | Sep 17 |
|------|------|

| What's it for? | Payroll for Lazaro |
|------|------|

17:51

Los primeros 3 días ..
Menos los 210 de la grúa  17:52

Ok  17:55 ✓✓

Espero que para el otro viernes viejo no
pase lo mismo y cuantas claras siempre
17:56 ✓✓

Reenviado

Gestionar tarjeta de débito    Make a Transfer    Depositar cheques    Mostrar más opciones

Mensaje

**Jose Contratista Trabajo** 

18 de septiembre de 2021



| Gestionar tarjeta de débito | Make a Transfer | Depositar cheques | Mostrar más opciones |

Buscar por descripción

∨ Mostrar Transacciones Programadas

| 20 SEP 2021 | Online Banking Transfer To Acct *2399 | -$130.00 |
| | Categories Pending | Saldo registrado $746.81 |

| 20 SEP 2021 | Checkcard Purchase - Visa Abcd123409/18/21 Card Xxxxxx3460 Pos -At | -$1.00 |
| | Categories Pending | Saldo registrado $876.81 |

| 20 SEP 2021 | Online Banking Transfer | $130.00 |
| | Categories Pending | Saldo registrado $877.81 |

| 20 SEP 2021 | Surcharge Fee-Pai Iso | -$3.00 |
| | Categories Pending | 18:06 |

Mira viejo hay no a caído nada  18:06 ✓✓

Ya viejo  18:12 ✓✓

Listo  18:12 ✓✓

Le estaba fallando su cuenta  18:13 ✓✓

22 de septiembre de 2021

Lazaro,
Me llegaron 2 claims de ustedes lo estoy peleando ..pero no te puedo pagar hasta que no resuelva. Los más seguro tu cheque estará aguantado por 3 semanas.

Mensaje